# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL SUAREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cv-3382 |
| ) | Judge Robert M. Dow, Jr. |
| JP MORGAN CHASE BANK NA, and ) | |
| BANK OF AMERICA, N.A., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant JP Morgan Chase Bank's ("Chase") motion to dismiss [41] Counts A-E of Plaintiff's first amended complaint [29] and Defendant Bank of America's ("BOA") motion to dismiss [37] Counts F-H of Plaintiff's first amended complaint. For the reasons stated below, Chase's motion [41] is granted in part and denied in part, and BOA's motion [37] is granted in part and denied in part.

**I.    Background**

The Court takes the following facts from the allegations set forth in Plaintiff's first amended complaint. For purposes of Defendant's motion to dismiss, the Court assumes as true all well pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

In February of 2007, Plaintiff Michael Suarez ("Plaintiff") went to the Vernon Hills, Illinois, branch of Chase ("the Chase Vernon Hills branch") to open a checking account. He was nearly 75 years old at the time, and spoke primarily Spanish. Plaintiff received assistance in opening the account from Chase employee Michael DeMarco ("DeMarco"). At the time that

Plaintiff opened his account, DeMarco bore the title, "Assistant Vice President and Branch Manager." At some point between February 2007 and August 2007, DeMarco was promoted to "Vice President and Branch Manager" of the Chase Vernon Hills branch.

From the time that Plaintiff opened the account in February 2007 until August 2007, Plaintiff alleges that he did not receive any bank statements from Chase. However, each week after opening his checking account with Chase, Plaintiff came to the Chase Vernon Hills branch to attend to his account. Plaintiff often encountered and spoke with DeMarco on those visits. During one of Plaintiff's visits to the branch, DeMarco recommended that Plaintiff use automatic electronic depositing for his pension and social security checks. On the basis of DeMarco's recommendation, Plaintiff began to use automatic electronic depositing for those funds.

During another of Plaintiff's visits to the Chase Vernon Hills branch, Plaintiff informed DeMarco that he lived on a three-acre lot in Lincolnshire, Illinois. DeMarco asked Plaintiff to show him the "papers" relating to the property. [29, at ¶ 18.] DeMarco and Plaintiff thereafter met to review the property documents. DeMarco learned from his review of the documents that Plaintiff had listed the Lincolnshire property for sale with Coldwell Banker Realty for $1.7 million. Plaintiff's contract with Coldwell Banker was set to expire in July 2007.

In early May 2007, DeMarco met with Plaintiff and told him that Chase was interested in buying Plaintiff's property for a price between $1.6 million and $1.75 million (the aggregate of $1 million immediately upon the sale of the property to Chase and between $200,000 and $250,000 upon Chase's reselling of each of the three lots). DeMarco advised Plaintiff to create a trust account with Chase after the sale of the property in order to guarantee him a ten percent annual income from the sale proceeds. DeMarco introduced Plaintiff to Jason Roberts, a

2

personal banker for Chase with whom Plaintiff presumably would work to set up the trust once the sale was complete.

Soon after informing Plaintiff of Chase's purported interest in buying the Lincolnshire property, DeMarco informed Plaintiff that the sale could not be finalized unless Plaintiff terminated his contract with Coldwell Banker. Plaintiff negotiated a deal with Coldwell Banker in which their contract would expire in early June 2007, approximately one month earlier than the original termination date. Plaintiff informed DeMarco of the new termination date of his contract with Coldwell Banker.

Sometime between early May and early June, DeMarco met with Plaintiff to tell him that Chase would be unable to buy or resell the Lincolnshire property unless Plaintiff improved the property by removing unsalable wetlands. Plaintiff informed DeMarco that his retirement income was insufficient for him either to continue residing on the Lincolnshire property or to do the earth-moving that DeMarco claimed was necessary to sell the property. DeMarco suggested that Plaintiff secure a line of credit on his property in order to make the improvements, and Plaintiff accepted DeMarco's suggestion.

DeMarco prepared an application for a $250,000 line of credit for Plaintiff, allegedly to permit Plaintiff to borrow the funds necessary to make improvements to the Lincolnshire property. DeMarco requested that Plaintiff meet with him prior to June 8, 2007, at the Chase Vernon Hills branch, to sign the application document. During their meeting, DeMarco informed Plaintiff that, as a matter of policy, Chase was essentially conflicted out of issuing Plaintiff the line of credit to improve the Lincolnshire property because Chase intended to buy the property from Plaintiff. Therefore, DeMarco explained, Plaintiff should obtain a line of credit from BOA. DeMarco "rushed" Plaintiff through the sizeable credit application document

and told him to sign the document in numerous places. [29, at ¶ 34.] Plaintiff alleges that he was confused during the meeting, but, on DeMarco's advice, signed the document.

Both Plaintiff and DeMarco met with either Nirmal Patel or Dhara Patel or both at the Buffalo Grove branch of BOA on June 8, 2007, to close on the line of credit based on the document that DeMarco had prepared. Unbeknownst to Plaintiff at the time, the document designated the Chase Vernon Hills branch as Plaintiff's address. Plaintiff alleges that either Nirmal Patel or Dhara Patel or both were aware that DeMarco was a branch manager for Chase, yet neither they nor anyone else at BOA inquired into the propriety of DeMarco's representation of Plaintiff's interests or designation of the Chase Vernon Hills branch's address as Plaintiff's address.

Also in June of 2007, BOA created a joint checking account in which both DeMarco and Plaintiff were designated as account-holders. Plaintiff alleges that bank statements pertaining to the BOA checking account were sent to DeMarco at DeMarco's personal address, and that Plaintiff never received any statements.

In mid-August 2007, Plaintiff learned that $245,000 had been disbursed from the BOA line of credit to DeMarco by way of a cashier's check that was sent to DeMarco's home address. Also around that time, Plaintiff first learned that DeMarco had designated the Chase Vernon Hills branch address as Plaintiff's address. Plaintiff alleges that he did not receive notice from BOA that funds were being withdrawn on his line of credit.

BOA sent Plaintiff a letter on April 6, 2010, asserting that Plaintiff was responsible for the outstanding balance on the line of credit and that BOA was proceeding with efforts to foreclose on the Lincolnshire property. Plaintiff alleges that, as of the date of filing of his first amended complaint, no foreclosure action on the property had commenced. However, Plaintiff

4

alleges that his credit has been adversely affected by information – sent from BOA to a credit reporting agency – that Plaintiff is in foreclosure on a line of credit.

Plaintiff filed a first amended complaint [29] against Chase and BOA on August 24, 2010. As to Defendant Chase, Plaintiff asserts claims of conversion (Count A), violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") (Count B), breach of fiduciary duty (Count C), common law fraud (Count D), and tortious interference with prospective advantage (Count E). As to Defendant BOA, Plaintiff asserts claims of violations of ICFA (Count F), breach of fiduciary duty (Count G), and aiding and abetting a breach of fiduciary duty (Count H). Chase has filed a motion to dismiss [41] Counts A-E under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. BOA has filed a Rule 12(b)(6) motion to dismiss [37] Counts F-H for failure to state a claim.

## II.     Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 569 n.14). In other words, the pleading must allege facts that plausibly suggest the claim asserted. *Twombly*, 550 U.S. at 570. "A pleading that offers

5

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (omission in original). The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

### A. Chase's Motion to Dismiss Counts A-E

Chase has moved to dismiss Count E of Plaintiff's first amended complaint for failure to state a claim pursuant to Rule 12(b)(6). [41] Plaintiff concedes that Count E was pleaded insufficiently. The Court therefore dismisses Count E without prejudice.

Chase has also moved to dismiss Counts A-D pursuant to Rule 12(b)(6) on the ground that Plaintiff has not sufficiently pleaded that Chase may be vicariously liable for the allegedly tortious conduct of its agent, DeMarco. Chase argues that Plaintiff failed to adequately allege that DeMarco was acting with actual authority or that DeMarco was acting with apparent authority in perpetrating the alleged fraud. Plaintiff does not dispute that his complaint fails to set forth a claim of actual authority. The sole issue is thus whether Plaintiff has sufficiently pleaded that DeMarco had apparent authority in his dealings with Plaintiff that were purportedly on behalf of Chase.

Under Illinois law, a principal may be bound by the acts of his agent when it *appears* that the principal has authorized the agent to perform, even through the principal has not given the agent *actual* authority to perform. See *Sphere Drake Ins. Ltd. v. American General Life Ins. Co.*,

376 F.3d 664, 673 (7th Cir. 2004) (quoting *Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 795 (Ill. 1993)). An agent's apparent authority is the authority that "the principal knowingly permits the agent to assume, or the authority which the principal holds the agent out as possessing. It is the authority which a reasonably prudent man, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Id.* (quoting *Gilbert*, 622 N.E.2d at 795). The Seventh Circuit in *Sphere Drake* reiterated the three-part test that a party asserting the existence of apparent authority must meet under Illinois law: "(1) the principal consented to or knowingly acquiesced in the agent's exercise of authority; (2) based on the actions of the principal and agent, the third person reasonably concluded that the party was an agent of the principal; and (3) the third person justifiably and detrimentally relied on the agent's apparent authority." *Id.* (quoting *Amcore Bank, N.A. v. Hahnamah-Albrecht, Inc.*, 759 N.E.2d 174, 183 (Ill. App. Ct. 2d Dist. 2001)).

Chase contends that Plaintiff has failed to allege facts sufficient to support the first two elements of the apparent authority test under *Sphere Drake*. Chase first argues that, to survive a motion to dismiss, Plaintiff must allege acts or words by Chase from which Plaintiff could have inferred that Chase manifested authority in DeMarco to engage in the specific actions that constituted the alleged fraud. See *Raclaw v. Fay, Conmy and Co., Ltd.*, 668 N.E.2d 114, 117 (Ill. App. Ct. 1st Dist. (1996) (holding that "[a]n agency relationship created by apparent authority flows from the acts of the principal); *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859 (7th Cir. 1998) (holding that "apparent authority is created by the same method as that which creates actual authority, except that the manifestation of the principal is to the third person rather than to the agent"). For example, Plaintiff would have to plead that a Chase representative other than DeMarco communicated with Plaintiff about Chase's alleged interest in buying Plaintiff's

7

property. Chase contends that Plaintiff's failure to affirmatively state in his complaint that Chase made manifestations to Plaintiff of DeMarco's authority to engage in the real estate deal or to encourage Chase customers to obtain loans from other banks is fatal to the claim.

Second, Chase argues that Plaintiff has failed to allege that his belief that DeMarco had such authority was reasonable. Chase relies upon *Harrison v. Dean Witter Reynolds, Inc.* in support of its argument. 974 F.2d 873 (7th Cir. 1992). In *Harrison*, the plaintiff sought the services of brokerage firm Dean Witter Reynolds in investing his company's money. *Id.* at 875. A Dean Witter executive advised the plaintiff to send the money directly to him and another employee so that they could invest it in a special investment fund available only to employees of Dean Witter. *Id.* "This misuse of the employee account would yield Harrison a significantly increased return because the bonds would be purchased at Dean Witter's cost and at the reduced commission allowed on employees' own transactions." *Id*. The scheme was a fraud. *Id.* at 876. After the employees misappropriated the funds and made investments that "went sour," Harrison sued Dean Witter under a theory of vicarious liability. *Id.* The Seventh Circuit found that "it was clear neither [agent] had the authority, either actual or apparent, to use the account thusly; Dean Witter's rules expressly forbad it, as would ordinary prudence." *Id.* at 884. The court concluded that the plaintiff could not have reasonably believed that the transaction appeared to be in the regular and ordinary course of business, and affirmed the lower court's grant of summary judgment. *Id.*

Plaintiff responds that his complaint adequately pleaded that Chase knowingly acquiesced to DeMarco's exercise of authority, and that Plaintiff's belief that DeMarco exercised authority to engage in the purported fraud was reasonable. For example, each encounter and meeting between Plaintiff and DeMarco took place at the Chase Vernon Hills branch, with the

8

sole exception of the June 8 meeting with BOA.  In addition, DeMarco not only held a senior position at the Chase Vernon Hills branch when he first began working with Plaintiff, but he was *promoted* by Chase during the course of his perpetration of the alleged fraudulent scheme – if anything, imbuing him with even more apparent authority than he already allegedly had. Plaintiff has thus plausibly alleged that "the principal consented to or knowingly acquiesced in the agent's exercise of authority."  *Sphere Drake*, 376 F.3d at 673.

Furthermore, Chase makes much of the fact that it does not buy real estate or assist customers in obtaining credit at competing banks.  However, Plaintiff contends that his belief in DeMarco's authority to engage in the purported real estate transaction was reasonable in that it grew out of the authority that DeMarco possessed.  Plaintiff's complaint described the development of Plaintiff's relationship with DeMarco as involving actually legitimate activities – such as opening a checking account and arranging automatic electronic deposits – as well as seemingly legitimate activities – such as creating a trust account (to be managed by Chase) in which to place proceeds of the eventual sale of the Lincolnshire property to Chase.  Furthermore, insofar as DeMarco engaged Chase employee Jason Roberts in a discussion with Plaintiff about the possibility of creating the trust, Plaintiff reasonably could have believed that the sale of the Lincolnshire property was legitimate and would benefit Chase.  Thus, as Plaintiff argues in his opposition to Chase's motion, the complaint does not allege that DeMarco "baldly ma[d]e his proposition for Chase to purchase Plaintiff's Lincolnshire property, but rather the proposition was clothed with involvement of other Chase personnel to stand ready to help Plaintiff with his money after the sale and the offering of a Chase investment product."  [46, at 6.]  Unlike in *Harrison*, there is no indication that Plaintiff here was aware that he would be acting expressly

contrary to Chase policy by complying with DeMarco's suggestions. See *Harrison*, 974 F.2d at 884.

Accepting all of Plaintiff's allegations as true for purposes of this motion, the Court concludes that Plaintiff has provided sufficient factual support to plausibly suggest that Chase knowingly acquiesced to DeMarco's authority and that Plaintiff's belief that DeMarco possessed the authority to engage in the purported fraud was reasaonable. Plaintiff met with DeMarco repeatedly at the Chase Vernon Hills branch and was introduced by DeMarco to other Chase employees regarding aspects of the purported fraud. In addition, Plaintiff's allegation that DeMarco had a managerial position at the outset of Plaintiff's relationship with him and was actually promoted over the course of the purported set-up of the fraud provides strong support for the knowing acquiescence prong of the apparent authority test. In view of those circumstances and of Plaintiff's status as a senior citizen whose first language was Spanish, Plaintiff has provided support for the contention that his belief in DeMarco's apparent authority was reasonable. The Court therefore denies Chase's motion with respect to Counts A-D.[1]

---

[1] Chase's reliance on this Court's opinion in *United States v. Dolphin Mortgage Corp.*, 2009 WL 153190, at *1 (N.D. Ill. Jan. 22, 2009), and the Seventh Circuit's opinion in *Crull v. Sunderman*, 384 F.3d 453, 467 (7th Cir. 2004), are unpersuasive. In *Dolphin*, this Court denied in part summary judgment after finding that there were enough uncontested facts for the Court to conclude that the agent – a loan officer – had apparent authority to act such that the principal – a loan correspondent mortgagee – could be held liable. *Dolphin*, 2009 WL 153190, at *15. The agent's authority was traceable to manifestations of the principal in that the principal gave the agent access to computers that enabled her to print loan forms bearing the principal's name and allowed the agent to input data from those forms. *Id.* The agent also signed the loan forms as if she were authorized to do so on the principal's behalf. *Id.* In *Crull*, the court of appeals held that the general rule that a principal may be bound by the apparent authority of its agent "must be applied with great circumspection when a state entity is the principal." 384 F.3d at 465-66. The court then found that the plaintiff failed to provide support for her claim that a state judicial inquiry board director had authority to unilaterally create employment policies that bound the hands of the board. *Id.* at 467. In that case, the board itself had expressly stated the limitations of the authority it gave to the director regarding employment determinations. As such, the court held that the plaintiff had not shown a factual issue regarding apparent authority to survive summary judgment. *Id.* at 469.

### B.     BOA's Motion to Dismiss Counts F-G

#### 1.     ICFA Claim

BOA contends that Count F of Plaintiff's claim should be dismissed because Plaintiff has not alleged that BOA "participated" in the alleged fraud as required under ICFA. To state a claim under ICFA, a plaintiff must allege that: (1) the defendant engaged in a deceptive act or practice; (2) the defendant intended that plaintiff would rely on the deception; and (3) the deception occurred during the course of conduct involving trade and commerce. 815 ILCS 505/2; see also *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996). Illinois courts have interpreted the first element as requiring direct or active participation in the deception. See *Jackson v. South Holland Dodge, Inc.*, 755 N.E.2d 462, 471 (Ill. 2001) (dismissing case after concluding that "there are no specific factual allegations that * * * [defendant] Chrysler directly participated in a scheme with the dealership to misrepresent facts to the plaintiff" and that plaintiff's sole allegation that Chrysler supplied forms that the dealership later completed with a misrepresentation was insufficient to show that Chrysler promoted the deceptive practice of the dealership); see also *Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 859 (Ill. 1998) (holding that "knowingly receiving the benefits of another's fraud is not actionable" under ICFA); *Brown v. SBC Commc'ns, Inc.*, 2007 WL 684133, at *3 (S.D. Ill. Mar.

---

It is, of course, premature at the motion to dismiss stage to expect the same level of detail in Plaintiff's complaint as the courts considered at the summary judgment stage in *Dolphin* and *Crull*, and the complaint may not be dismissed for failure to allege facts with that level of specificity. That being said, the Court notes that here, as in *Dolphin*, Plaintiff has alleged that DeMarco had access to Chase's premises, personnel, and presumably other resources necessary to, for example, create a trust for the presumed proceeds of Chase's purported purchase of the Lincolnshire property. And, unlike *Crull*, there are no allegations that are directly contrary to Plaintiff's assertion that DeMarco had apparent authority to perpetuate the alleged fraud. The Court thus finds both *Dolphin* and *Crull* to be inapposite, at least at this stage of the case.

1, 2007) (holding that "merely aiding and abetting an ICFA violation * * * is not actionable as a violation of section 2 of the statute" (citing *Zekman*, 695 N.E.2d at 859)).

Plaintiff alleges that BOA violated ICFA because either Nirmal Patel or Dhara Patel or both "participated in the deceptive acts of Defendant Chase" by issuing the line of credit based on the document that DeMarco had prepared despite knowing that DeMarco was a Chase employee. Plaintiff contends that Nirmal Patel and/or Dhara Patel should have known to scrutinize the loan application more intensely before accepting the document. Instead, Plaintiff claims, they "conducted themselves in such a manner that conveyed to Plaintiff that the highly irregular transaction involving an officer of a competing bank was routine * * *." [45, at 4.] As BOA notes, these allegations may be sufficient to show that BOA knowingly received the benefit of DeMarco's deception. But that showing alone does not an ICFA claim make. See *Zekman*, 695 N.E.2d at 859.

Plaintiff does not allege, or provide facts that plausibly would support an inference, that BOA *actively or directly* participated in DeMarco's deception. See *Jackson*, 755 N.E.2d at 471; *Zekman*, 695 N.E.2d at 859. For example, Plaintiff does not allege that the BOA officers worked directly with DeMarco to help prepare the credit application, actively sought to keep Plaintiff from receiving statements or updates pertaining to the line of credit, or knew that DeMarco was allegedly conspiring to defraud Plaintiff by preparing the document and providing the Chase Vernon Hill branch's address as the contact information for the line of credit. Instead, Plaintiff merely alleges that BOA should have known – based on their awareness of DeMarco's job – that DeMarco was allegedly perpetrating a fraud on Plaintiff and, on that basis, scrutinized the transaction more closely. As stated above, however, this allegation is insufficient to support a claim that BOA actively or directly participated in the purported fraud. Without additional

factual support, Plaintiff's conclusion that BOA did so is merely speculative. See *E.E.O.C. v. Concentra Health Servs., Inc*., 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 569 n.14). Plaintiff therefore cannot maintain an ICFA claim against BOA, and the Court dismisses Count F without prejudice.

### 2. Breach of Fiduciary Duty

BOA agues that Count G of Plaintiff's complaint should be dismissed because Plaintiff has not sufficiently pleaded the existence of a fiduciary relationship between BOA and Plaintiff. A fiduciary duty inheres as a matter of law in certain types of relationships – for example, a lawyer-client relationship. *Pommier v. People's Bank Maycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992). As a general rule, it does *not* arise in a debtor-creditor relationship. *Id.*; *Willmott v. Federal Street Advisors, Inc.*, 2008 WL 2477507, at *6 (N.D. Ill. Jun. 17, 2008). However, an exception to the rule may pertain if the creditor exercises "dominion and control" over the debtor. *Willmott*, 2008 WL 2477507, at *6 n.8 (quoting *ARH Dist., Inc. v. ITT Commercial Fin. Corp.*, 1987 WL 17834, at *3 (N.D. Ill. Sep. 28, 1987)). Thus, a plaintiff-debtor seeking to assert a breach of fiduciary claim against a creditor-defendant must plead "that he placed trust and confidence in another so that the other gained influence and superiority over him" by reference to "factors such as kinship, age disparity, health, mental condition, education, business experience, and extent of reliance." *Id.* (citing *Santa Claus Indus., Inc. v. First Nat'l Bank of Chicago*, 576 N.E.2d 326, 331 (Ill. App. Ct. 1st Dist. 1991); *Bank Computer Network Corp. v. Continental Illinois Bank and Trust of Chicago*, 442 N.E.2d 586, 594 (Ill App. Ct. 1st Dist. 1982).

Here, Plaintiff alleges that he placed trust and confidence in BOA. Plaintiff further alleges that BOA gained influence and superiority over him by memorializing the credit

application without proper scrutiny despite the fact that the application was "being arranged by a bank officer of a competitor for Plaintiff who was visibly elderly, vulnerable and principally a speaker of Spanish." [29, at ¶ 98.]

Although Plaintiff's allegations provide rather fragile support for his claim, they are more than conclusory or threadbare. See *Twombly*, 550 U.S. at 555. At least at this early stage of the case, accepting the allegations in the complaint as true for purposes of this motion, the Court concludes that Plaintiff has stated a claim for breach of fiduciary duty as to BOA. BOA's motion on this ground is therefore denied. Whether, after further factual development, Plaintiff can ultimately succeed in showing that BOA had and/or breached a duty to protect him against the fraud perpetrated by DeMarco is a question for a later stage of this litigation.[2]

### 3. Abetting Breach of Fiduciary Duty

Finally, BOA seeks to dismiss Count H of Plaintiff's complaint, which asserts that BOA aided and abetted Chase in breaching its fiduciary duty to Plaintiff. A plaintiff may state a claim for aiding and abetting if he alleges (1) that the party whom the defendant aided performed a wrongful act that caused an injury; (2) that the defendant was aware of its role in providing the assistance; and (3) the defendant *knowingly* and substantially assisted the violation. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (emphasis added).

---

[2] BOA's alternative argument for dismissal – that Plaintiff fails to plead damages as a result of the alleged breach – is unpersuasive. Although Plaintiff has not yet paid his obligation for the line of credit or had the Lincolnshire property foreclosed upon, he alleges that his credit history has been tainted and that BOA has informed him that it has commenced foreclosure proceedings against him. Ultimately, as BOA states, Plaintiff will only be able to prove damages if he can show that he was denied credit on account of the negative credit report. See *Reeder v. HSBC USA, Inc.*, 2009 WL 4788488, at *13 (N.D. Ill. Dec. 8, 2009). However, under *Twombly*, Plaintiff's allegations that he suffered damages as a result of the alleged fraud are sufficient to sustain the claim at this stage of the proceedings.

Plaintiff's complaint alleges that BOA *should have suspected*, on the basis of DeMarco's job and Plaintiff's age and language abilities, that DeMarco was perpetrating a fraud on Plaintiff. However, as stated above, Plaintiff does not allege that BOA had *actual knowledge* that DeMarco was defrauding Plaintiff. As such, Plaintiff has failed to state an aiding and abetting claim. The Court therefore dismisses Count H without prejudice.

## IV. Conclusion

For the reasons stated above, the Court denies Chase's motion to dismiss [41] with respect to Counts A-D and grants the motion with respect to Count E. The Court denies BOA's motion [37] with respect to Count G and grants it with respect to Counts F and H. Plaintiff is given 28 days to replead as to Counts E and G if he believes that he can cure the deficiencies identified above.

Dated: June 1, 2011 
_____
Robert M. Dow, Jr.
United States District Judge